I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 5/06/05

DEPUTY CLERK

scan only

FILED
MAY - 6 2005
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY             DEPUTY

DOCKETED ON CM
MAY - 9 2005
BY          082

117

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MOHAMMAD SALAMEH,           ) Case No. CV 98-8493-SVW (MLG)
                            )
        Plaintiff,          ) REPORT AND RECOMMENDATION OF
                            ) UNITED STATES MAGISTRATE JUDGE
        v.                  )
                            )
PETER CARLSON, et al.,      )
                            )
        Defendants.         )
_____)

I.  **Procedural Background**

On November 16, 1998, Plaintiff Mohammad Salameh, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed a verified civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Magistrate Judge Elgin Edwards screened the complaint as required by 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c) and found it adequate to order service on two of the named Defendants, Lieutenant Robert Garcia and Correctional Officer Jason Swanson. (Order dated January 15, 1999).

//
//

Defendants Garcia and Swanson filed a motion to dismiss the complaint. The motion was granted and Plaintiff was given leave to file an amended complaint. (Order dated February 10, 2000). On March 1, 2000, Plaintiff filed a first amended complaint, in which he claimed violations by defendants of his rights under the Fourth, Fifth, and Eighth Amendments to the United States Constitution.

After screening the first amended complaint, Magistrate Judge Edwards ordered service on one additional Defendant, Special Investigations Supervisor J. Fitzmaurice.[1] (Order dated March 23, 2000). On October 20, 2000, Defendants Garcia, Fitzmaurice and Swanson filed a motion for summary judgment. Magistrate Judge Edwards issued an order that established a briefing schedule for the motion and specifically advised Plaintiff of the requirements for opposing summary judgment. (Civil Minute Order dated October 27, 2000). Plaintiff filed a document on November 28, 2000, which was construed as his opposition to Defendants' motion for summary judgment. Defendants filed a timely reply.

On July 27, 2001, Magistrate Judge Goldman[2] filed a report and recommendation finding that all Defendants were entitled to summary judgment on the claims arising under the Fourth and Fifth Amendments and Defendant Fitzmaurice was entitled to summary judgment on the claims arising under the Eighth Amendment. Plaintiff filed objections to the report and recommendation on August 16, 2001. The report and recommendation was adopted by District Court Judge Wilson

---

[1] Judge Edwards determined that the first amended complaint failed to state a cognizable claim against Defendants Carlson, Adams and Williams to justify service of process upon them.

[2] This case was transferred to the calender of United States Magistrate Judge Marc L. Goldman on July 3, 2001.

on October 17, 2003. As a result, Plaintiff's Eighth Amendment excessive force claim against Garcia and Swanson was the only claim that survived the summary judgment motion.

On March 2, 2004, after discovery had been completed, Defendants Garcia and Swanson filed another motion for summary judgment in which they contend they are entitled to qualified immunity on Plaintiff's remaining Eighth Amendment claim. On March 3, 2004, the Court ordered Plaintiff to file an opposition to Defendants' motion on or before 30 days from the date of the order. Again, the Court specifically advised Plaintiff of the requirements for opposing summary judgment. Plaintiff did not file a timely opposition. On May 5, 2004, the Court filed an order directing Plaintiff to show cause why the action should not be dismissed for failure to prosecute. Plaintiff filed a response on May 27, 2004, styled "Plaintiff's Motion to Show Cause," in which he contended that the action should not be dismissed based upon the claims and arguments made in his prior pleadings in the case.[3] Plaintiff also requested appointment of counsel. The Court construed Plaintiff's "motion to show cause" as a response to the Court's Order of May 5, 2004, and denied the request for appointment of counsel.

\\
\\
\\
\\
\\

---

[3] In addition, the court may treat a verified complaint, such as Plaintiff filed here, as an affidavit in opposition to the motion for summary judgment. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th cir. 1987).

3

## II. Facts

On June 17, 1998, based on intelligence that tensions within the United States Penitentiary in Lompoc,[4] California were high between the Sunni Muslim Community and the Odinist Community inmates, Warden Michael Adams authorized the removal of approximately 20 inmates, who were identified as "probable participants or potential victims of these threats," including Plaintiff, from their general housing units to the prison's special housing unit ("SHU"). (Mot. for Summ. J., Decl. of Adams, at 19-20).

Defendant Lieutenant Garcia supervised the escort team's transfer of Plaintiff to the SHU. (Id., Decl. of Garcia, at 25). Plaintiff cooperated with Special Operations Response Team ("SORT") members when they ordered him to come out of his cell for transfer to the SHU. Defendant Swanson was one of the SORT members. (Id., Decl. of Swanson, at 54). According to Defendant Garcia, Plaintiff was in handcuffs only for "the brief amount of time that it took the escort team to transfer him" to the SHU. (Id., Decl. of Garcia, at 25). Garcia does not recall Plaintiff complaining about any injury due to the handcuffs, (id.), nor did Garcia observe any conduct by members of the SORT team that was inappropriate. (Id., Decl. of Garcia, at 26). Defendant Garcia states that he did not order the use of excessive force against Plaintiff nor did he observe Plaintiff being assaulted. (Id.).

Likewise, Defendant Swanson avers that he was not involved in any use of force against Plaintiff during the transfer. He claims that he would not have placed handcuffs too tightly on Plaintiff and

---

[4] Plaintiff was later transferred to the United States Penitentiary in Florence, Colorado on October 4, 2002.

he would not have intentionally stepped on Plaintiff's toes or pushed him into the bars of gates as alleged by Plaintiff. (Id., Decl. of Swanson, at 55). Nor did Swanson witness any other member of the SORT team doing so. (Id., Decl. of Swanson, at 56).

Plaintiff claimed in his deposition that prior to being escorted to the SHU, his handcuffs were secured "too tightly" by Swanson, which caused Plaintiff pain. (Mot. for Summ. J., filed Oct. 20, 2000, Ex. A at 18). Swanson and an unidentified SORT member then put their hands under Plaintiff's arms and "mostly carried" Plaintiff, continuously stepping on his bare toes in the process. (Id. at 19). As he entered H Unit, Plaintiff alleges he "was slammed suddenly to the bars," which, according to Plaintiff, resulted in a cut to his eye. (Id.).

After he entered H Unit, Plaintiff asked Garcia to take the handcuffs off because they were too tight. (Id. at 20). Garcia allegedly told Plaintiff to "shut up" but removed the handcuffs two minutes later. (Id.). Significantly, Plaintiff testified that Garcia never touched him other than to remove the handcuffs. (*Id.* At 48-49). Plaintiff was then strip-searched after which Swanson again put the handcuffs on too tightly. (Id. at 20).

Plaintiff was then escorted in the same manner from H Unit to I Unit. Plaintiff describes the treatment he received while being escorted to the I Unit as follows:

> Every gate I passed they tried to slam me from the gate by pushing my head, my body through there when I passed any gate, any door. [¶] When we climbed the stairs, like they made themselves fall down on me or something like that. And there they have big boots. So they step on my feet.

5

1       . . . [¶] And I remember something as I'm Arabic
2       descendant. One of them was [] [laughing], and he said,
3       "This is more fun than the Desert Storm."
4  (Id. at 21).

5  Plaintiff's injuries were evaluated shortly after the transfer
6  by physician's assistant G. Pagaduan. Pagaduan's report illustrates
7  that during the examination Plaintiff reported that the restraints
8  were applied too tightly and that his face hit the wall during the
9  transfer. (Mot. for Summ. J., Med. Report, at 23). The following
10 injuries were recorded: "scratch [right] side of face;" "0.5 cm cut
11 to chin;" "blood to 2nd toe nail;" "handcuff marks to both wrists
12 [with] erythema;" and "pain on pressure to [right] hand." (Id.).
13 Plaintiff was directed to apply a warm compress to the numb area of
14 his hand, apply antibiotic ointment to the right side of his face and
15 chin and to see the physician's assistant as needed. (Id.).

17 **III. <u>Standard of Review</u>**

18 Summary judgment is appropriate when "there is no genuine issue
19 as to any material fact." Fed. R. Civ. P. 56(c); *Anderson v. Liberty
20 Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The moving party bears
21 the initial burden of establishing "the absence of a genuine issue
22 of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
23 (1986). Material facts are those that affect the outcome of the
24 case. *Liberty Lobby*, 477 U.S. at 248.

25 Once the moving party presents sufficient evidence or argument
26 to support the motion, the burden shifts to the adverse party to set
27 forth specific facts showing a genuine triable issue. Fed. R. Civ.
28 P. 56(e). The non-movant must "go beyond the pleadings and by his

6

own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Rule 56(c)); *see also Liberty Lobby*, 477 U.S. at 257.

Conclusory allegations are insufficient to withstand a motion for summary judgment. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forth with significant probative evidence establishing a genuine issue of material fact. *See Liberty Lobby*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

## IV. Discussion and Analysis

### A. Qualified Immunity Framework

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Where a government official asserts qualified immunity, the district court must first inquire whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001); *San Jose Charter of Hell's Angels Motor Cycle Club v. City of San Jose*, 402 F.3d 962,

971 (9th Cir. 2005).

If a constitutional violation can be established, the next inquiry is whether the right was clearly established in the specific context of the case, rather than as a broad general proposition. *Id.* The dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*; *see also Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534 (1991).

In the context of a motion for summary judgment based on qualified immunity, this Court must determine, viewing the facts in the light most favorable to Plaintiff, whether there remains a genuine issue of fact as to whether Defendants violated Plaintiff's Eighth Amendment rights and, if so, whether a reasonable officer in the position of the Defendants could have believed his conduct was lawful. *Marquez v. Guttierez*, 322 F.3d 689, 692 (9th Cir. 2003).

B. **The Evidence Demonstrates a Genuine Issue of Fact as to a Constitutional Violation with Respect to the Conduct of Defendant Swanson, but not Defendant Garcia**

The facts alleged, taken in the light most favorable to Plaintiff, sufficiently state a violation of Plaintiff's rights under the Eighth Amendment with respect to the misconduct alleged against Swanson. *Saucier*, 533 U.S. at 201. However, the facts demonstrate that Garcia is entitled to qualified immunity.

\\

Plaintiff contends that the both defendants employed an excessive use of force in transferring him to the SHU. The unnecessary and wanton infliction of pain against an inmate constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986). In excessive physical force claims in the prison contest, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995 (1992); *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)(applying *Hudson* standard to claim alleging excessive force by guards in breaking up prison fight). The *Hudson* Court articulated five factors to consider in evaluating Eighth Amendment claims of unnecessary force in the prison context: (1) the extent of the injury suffered by an inmate; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the reasonable officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Martinez*, 323 F.3d at 1184.

The evidence relating to Garcia is simply insufficient to create a genuine issue of material fact as to whether he applied force in such a manner as to violate the Eighth Amendment. The allegations against Garcia are limited to the claim that he waited two minutes to loosen Plaintiff's handcuffs after being told by Plaintiff that they were too tight. While a refusal to loosen handcuffs can result in a finding of excessive force, the cases that have done so all involved initial arrest scenarios and far more egregious facts.

*Alexander v. County of Los Angeles*, 64 F.3d 1315, 1323 (9th Cir. 1995)(Failure to loosen handcuffs for forty-five minutes resulting in swelling and wrists turning blue); *Palmer v. Sanderson*, 9 F.3d 1433, 1434 (9th Cir. 1993)(refusal to loosen handcuffs on a 67-year old stroke victim with limited mobility). Garcia acted with more than reasonable speed in loosening the handcuffs. There is simply no genuine issue of material fact as to whether he acted maliciously or sadistically with the intent to cause harm. Garcia is entitled to qualified immunity.[5]

On the other hand, the facts viewed in the light most favorable to Plaintiff, establish that Plaintiff has sufficiently alleged a constitutional violation against Swanson. As noted above, the evidence shows that Plaintiff cooperated with Swanson during his transfer to the SHU. In dispute is whether, as Plaintiff claims: Swanson intentionally secured the handcuffs too tightly on two separate occasions; in the course of transit Plaintiff was repeatedly slammed into bars and doors; in the course of transit, Swanson continuously stepped on his bare feet with the intent to cause injury; or whether, as Defendants claim, Plaintiff was simply not assaulted by any member of the SORT team.

Construing these allegations in the light most favorable to Plaintiff, he has created a genuine issue of material fact as to

---

[5] Even if it could be said that the Garcia's conduct might give rise to a Constitutional violation, it cannot be said that it would have been clear to a reasonable officer in Garcia's position that his conduct was unlawful. There is no question but that it was lawful for prison officials to handcuff Plaintiff during the move. Swanson, not Garcia, applied the handcuffs in the first instance. The minimal injury Plaintiff suffered to his wrist demonstrates that a reasonable corrections officer would not have thought a two minute wait to remove the handcuffs would be unlawful.

10

whether Swanson unnecessarily and wantonly inflicted pain. Although the injuries sustained by Plaintiff were arguably not serious, even *de minimis* injuries do not bar a prisoner's Eighth Amendment claim if the amount and nature of force used is shown to be malicious. *See Hudson*, 503 U.S. at 7 (although "the absence of serious injury is . . . relevant to the . . . inquiry, . . . [it] does not end it."); *Martinez*, 323 F.3d at 1184 n.2 (stating that *Saucier* "created no bright-line rule automatically granting qualified immunity in all cases where a plaintiff's injury could be called *de minimis*."); *Henderson v. Lamarque*, 2002 U.S. Dist. LEXIS 10636, at *4 (N.D. Cal. June 6, 2002) ("It is not necessary that a prisoner have suffered injury in order to prevail on an Eighth Amendment claim for use of excessive force."); *Sogbandi v. Sherman*, 2001 U.S. Dist. LEXIS 16092. at *4 (N.D. Cal. Sept. 28, 2001).

The allegations could support a finding that Swanson unnecessarily and wantonly inflicted pain upon Plaintiff. Even accepting Defendants' account that information relating to serious security concerns necessitated the transferring of Plaintiff and other inmates to a different cell block, there is no indication in the record that Plaintiff was uncooperative or put up any resistance of any kind during the transport. Applying the five factors articulated by the Supreme Court in *Hudson*, this Court concludes that while Plaintiff's alleged injuries were not severe, his allegations regarding the degree of force used and the absence of any justification for employing that force suffice to establish an Eighth Amendment violation against Swanson. Accordingly, this Court will proceed to determine whether it would have been clear to Swanson at the time that his alleged conduct was unlawful.

C. <u>**Swanson Should Have Known That His Conduct was Unlawful in the Situation Presented**</u>

At step two of the qualified immunity analysis, this Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Marquez*, 322 F.3d at 692 (holding that defendant is still entitled to qualified immunity if "reasonable officer could have believed his conduct was lawful"). However, "'[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [] but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)).

Swanson is not entitled to qualified immunity because it was clearly established in June 1998 that intentionally and repeatedly banging an inmate into gates and doors, continuously stepping on his bare feet and handcuffing his hands too tightly, when the inmate was compliant, constituted an Eighth Amendment violation. Again, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 8 (citing *Whitley*, 475 U.S. at 317). In the Ninth Circuit, a reasonable officer has been on notice at least since 1991 that an "unprovoked and unjustified attack by a prison guard" violates clearly established constitutional rights. *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991). In *Felix*, the Ninth Circuit held that a defendant's use of his authority to "intentionally and gratuitously" degrade an

12

inmate's dignity, and the unprovoked pushing and hurling of the inmate against a wall, violated the inmate's Eighth Amendment rights. This Court finds that Plaintiff's allegations, if credited, make his situation analogous to that in *Felix*. *See also Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005)(holding that allegation in declaration that guard slammed plaintiff's face into wall causing a bloody nose and a swollen eye and then kicked him in the penis and back while handcuffed was sufficient to defeat a claim of qualified immunity); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)(holding that Eighth Amendment violated by assault carried out on unresisting inmate).

In conclusion, the evidence shows Plaintiff did not resist his removal from the cell nor resist in any way during his escorted transfer. Nevertheless, he alleges that his handcuffs were deliberately over-tightened and that he was slammed into steel bars and stepped upon, causing a cut to his eye and a bloody foot. That one of the officers allegedly referred to the events of Desert Storm suggest an animus amongst the correctional officers towards him. The force Swanson is alleged to have used, if true, was not reasonably related to any apparent need.[6] Even viewing the situation as a reasonable officer in Defendant's position could have perceived it,

---

[6] Although Defendants appear to assert that Plaintiff's underlying conviction for being one of the terrorists that perpetrated the bombing of the World Trade Center in February 1993, his "history of terrorism" that was "well-known" to the correctional officers at USP Lompoc, and his "long history of disruptive behavior," which included some twenty-six incident reports at the time of the events at issue here, are in some way relevant to the amount of force used, (see Mot. for Summ. J., Decl. of Adams, at 16-19), this Court does not agree. For one thing, the last incident report noted was dated September 6, 1997, some nine months before the transfer and alleged assaults; for another, Defendants' knowledge of Plaintiff's "history of terrorism" could support an inference that prison staff sought deliberately to harm him.

see *Marquez*, 322 F.3d at 693, the allegations, viewed in the light most favorable to Plaintiff, suggest that Swanson took these actions not in good faith, but for the purpose of causing harm. Accordingly, Swanson's contention that he is entitled to qualified immunity must be rejected.

## V. Conclusion

Based on the foregoing, it is recommended that:

1. Defendant Swanson's motion for summary judgment be **DENIED**;
2. Defendant Garcia's motion for summary judgment be **GRANTED**;
3. The case be transferred to the calendar of District Judge Stephen V. Wilson for trial or other further proceedings as he may order.

Dated: May 6, 2005

Marc L. Goldman
United States Magistrate Judge