Joyce Ellen Rosendahl
California State Bar No. 242807
Law Offices of Joyce Ellen Rosendahl
P.O. Box 15966
Newport Beach, CA  92659
Phone: 949-922-9462
Fax: 949-480-0062
joycerosendahl@rosendahl-law.com
Attorney for Plaintiff Mohammad A. Salameh

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD A. SALAMEH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PETER CARLSON, et al.,<br><br>　　　　　Defendants. | Case No.: CV-98-8493-SVW (MLG)<br><br>PLAINTIFF MOHAMMAD SALAMEH'S TRIAL BRIEF<br><br>TRIAL:  JANUARY 8, 2008, 9 A.M. |

　　　　Pursuant to Local Rule 16-10©, Plaintiff Mohammad A. Salameh responds to the legal arguments in Defendant's September 10, 2007, Memorandum of Contentions of Fact and Law.  In his Memorandum, Defendant implicitly argues that Defendant did not use excessive force—but if Defendant *did* use excessive force, Defendant did not do so maliciously and sadistically.  (Def.'s Mem. of Contentions of Fact and Law 5:20-6:4.)  Next, Defendant expressly argues that even if he *did* use excessive force maliciously and sadistically, he is entitled to qualified immunity.  (*Id.* at 13:1-3.)

In the prison context, Eighth Amendment is violated by "the use of official force or authority that is 'intentional, unjustified, brutal, and offensive to human dignity.'" *Felix v. McCarthy*, 939 F.2d 699, 701 (9th Cir. 1991) (citing Meredith v. Arizona, 523 F.2d 481 (9th Cir. 1975)).  Defendant used his position of authority—under the cloak of anonymity of the SORT team—to "intentionally and gratuitously" degrade Plaintiff's dignity.  *Id.*  Because the contours of Plaintiff's rights were clearly established on June 17, 1998, Defendant is not entitled to qualified immunity.

## I.     Eighth Amendment—Excessive Force

In an inmate's excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  It is uncontested that Plaintiff remained compliant, cooperative, cuffed, and in the custody of the SORT team during his entire transfer.  Under these circumstances, the Eighth Amendment clearly prohibits the "unnecessary and wanton infliction of pain" on an inmate.  *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

The *Hudson* court enumerated factors that "may be proper to evaluate" in determining whether the use of force in a particular situation was "wanton and unnecessary."  *Hudson*, 510 U.S. at 6-7.  These factors include (1) the need for the application of force; (2) the threat reasonably perceived by reasonable officials; (3) the relationship between the need for force and the force used; (4) whether any efforts were

made to temper the severity of a forceful response; and (5) the nature and extent of the plaintiff's injuries. *Id*.

Under *Hudson*, the deference due to prison officials charged with the difficult task of maintaining order at penal institutions must be considered. Plaintiff acknowledges that USP Lompoc officials acted reasonably in ordering Plaintiff's transfer to the SHU based on the reports of imminent violence at the institution—and that it was reasonable to use the SORT team to transfer Plaintiff. However, Plaintiff remained cooperative and compliant through out his transfer to the SHU. There were no exigent circumstances requiring Defendant to use force to maintain or restore order and/or institutional security. There being no need to use force, the relationship between the need for force and the amount of force use are not relevant to the analysis in this case.

No reasonable officer in the Defendant's position, dressed in full protective gear and accompanied by the SORT team, would feel threatened by a compliant inmate who was cuffed with his hands behind his back. Defendant made no effort to temper his forceful response, even after Plaintiff complained to Lieutenant Garcia about the tight handcuffs in the strip-search area. Defendant would have seen the very red marks around Plaintiff's wrists when Plaintiff's cuffs were removed for the strip-search, yet Defendant once again applied the cuffs in an excessively tight manner after the strip-search. Defendant also would have noted during the strip-search that Plaintiff was shaking from the pain of being carried in the "chicken move." Nevertheless, Defendant proceeded to carry Plaintiff in the exact same manner after Plaintiff's strip-search.

--3--

Defendant further injured Plaintiff by banging and slamming Plaintiff into the gates, grilles, and doorways of the interior of the SHU, and stepped on Plaintiff's bare feet with his heavy boots.

In *Hudson*, the Court noted that "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 510 U.S. at 6. Plaintiff's injuries were not life-threatening—but Plaintiff was injured. Although Defendant attempts to characterize Plaintiff's injuries as insignificant, Plaintiff suffered more than just the usual discomfort associated with being cuffed. On two separate occasions, Defendant excessively tightened the handcuffs around Plaintiff's wrists, Defendant placed his hand under Plaintiff's armpit, and forced Plaintiff's arms way up behind Plaintiff's back. With the assistance of another SORT team member, Defendant carried Plaintiff in this painful "chicken move" position from Plaintiff's cell in M Unit in the general population to I Unit in the SHU. Defendant stepped on Plaintiff's bare feet and banged and slammed Plaintiff into the gates, grilles, and doorways of the interior of the SHU, causing cuts to Plaintiff's face and chin, and painful swelling and bruising around Plaintiff's right eye.

## II.     Defendant Acted Maliciously and Sadistically To Cause Harm

Defendant's malicious and sadistic intent can be inferred from the fact that Defendant applied the handcuffs in an excessively tight manner not once, but twice. When Plaintiff arrived at the area designated for his strip-search, Plaintiff asked Lieutenant Garcia to remove the handcuffs, because they were too tight. Once the handcuffs were removed, Plaintiff's wrists bore witness to the excessive tightness of the

cuffs because both of Plaintiff's wrists had deep, very red marks around them. Nonetheless, after the strip-search Defendant once again applied the cuffs in an excessively tight manner.

Defendant's malicious intent can also be inferred from the manner in which he carried Plaintiff through the interior of the SHU, heedless of the pain he was inflicting on Plaintiff. Plaintiff will testify that Defendant and the other SORT team members acted as if they enjoyed abusing Plaintiff. As Plaintiff was carried up the staircase to the third floor of I Unit, one of the SORT team members laughed and said, "This is more fun than Desert Storm." This statement by one of Defendant's fellow SORT team members is admissible as an admission by a party-opponent under Federal Rules of Evidence 801(d)(2)(E). There is sufficient evidence to support a finding that the members of SORT team acted as joint-venturers. After all, this was a SORT *team*—not a random assemblage of individual officers. The entire team was dressed in full protective gear, including helmets and visors, providing anonymity for the individual officers and precluding Plaintiff's identification of any of the SORT team members except the Defendant and Lieutenant Garcia.

Furthermore, the unlawful nature of Plaintiff's strip-search under BOP regulations should have been obvious to the whole SORT team. The regulations clearly permit visual searches, including a visual inspection of all body surfaces and body cavities, when there is reasonable belief that contraband may be concealed, or when an inmate has had a good opportunity to conceal contraband. 28 CFR § 552.11(b)(1) (1998) (45 Fed. Reg. 75134, Nov. 13, 1980, as amended at 48 Fed. Reg. 48970, Oct. 21, 1983; 56

--5--

Fed. Reg. 21036, May 6, 1991). Placement in a Special Housing Unit is specifically mentioned as an example of an occasion calling for a visual search. However, the regulations also state that when a visual search is necessary, the "visual search shall be made in a manner designed to assure as much privacy to the inmate as possible." *Id*. Plaintiff's visual search, conducted as it was in the presence of approximately one dozen officers, was designed to humiliate and degrade Plaintiff.

### III.   Defendant Is Not Entitled to Qualified Immunity

Defendant contends that even if his conduct violated Plaintiff's Eighth Amendment rights, he is entitled to the affirmative defense of qualified immunity. In *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the U.S. Supreme Court established a two-step inquiry for assessing whether qualified immunity applies. In the first step, the Court must determine whether the facts show the Defendant's conduct "violated a constitutional right." *Id*. at 201. In the second step, the Court must determine whether the constitutional right was "clearly established." *Id*. Because Defendant violated Plaintiff's Eighth Amendment rights—therefore, the only remaining question is whether or not Plaintiff's rights were clearly established on June 17, 1998.

In the Ninth Circuit, a reasonable correctional officer has been on notice since 1991 that an "unprovoked and unjustified attack by a prison guard" violates an inmate's clearly established constitutional rights. *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991). In *Felix*, the Ninth Circuit held that the defendant prison guards unprovoked pushing and hurling of a cuffed and compliant inmate against a wall, and the use of their

--6--

authority to "intentionally and gratuitously" degrade an inmate's dignity violated the Eighth Amendment.

Futhermore, BOP regulations in effect in 1998 expressly proscribed Defendant's conduct.  The regulations authorized the use of handcuffs as precautionary restraints in the movement and transfer of inmates, including while escorting an inmate to a Special Housing Unit pending investigation.  28 C.F.R. § 552.20 (1998) (59 Fed. Reg. 30469, June 13, 1994, as amended at 61 Fed. Reg. 39800, July 30, 1996).  However, the regulations expressly stated that restraint equipment, including handcuffs, may not be used "[i]n a manner that causes unnecessary physical pain or extreme discomfort."  28 C.F.R. § 552.22(h)(3) (1998) (54 Fed. Reg. 21394, May 17, 1989.  Redesignated and amended at 59 Fed. Reg. 30469, 30470, June 13, 1994; 61 Fed. Reg. 39800, July 30, 1996).   Defendant caused Plaintiff to suffer unnecessary physical pain *and* extreme discomfort.

Defendant's reliance on the U.S. Supreme Court decision in *Brosseau v. Hagen*, 543 U.S. 194, 125 S. Ct. 596, 160 L. E. 2d 583 (2004) is misplaced. Defendant's malicious and sadistic use of excessive force against Plaintiff does not fall within the "hazy border between excessive and acceptable force."  *Id.* at 201 (citations omitted). Nor is Defendant entitled to qualified immunity because he "reasonably misapprehend[ed] the law governing the circumstances [he] confronted."  *Id.* at 198. *Brosseau* involved a police officer's use of potentially deadly force in a volatile situation on the street—not the use of excessive force on a cuffed and compliant inmate.  Plaintiff Hagen, a suspect who was shot in the back while fleeing from officer Brosseau,

subsequently brought a § 1983 claim against Brosseau for excessive force. The constitutional question in *Brosseau* was governed by the principles established in *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) and *Graham v. Connor*, 460 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) for claims of excessive force under the Fourth Amendments 'objective reasonableness' standard. *Brosseau*, U.S. 543 at 197. Thus, <u>*Brosseau*</u> cannot support Defendant's qualified immunity claim.

### **IV.     Plaintiff Is Entitled To An Award Of Attorney's Fees**

Plaintiff is entitled to an award of attorney's fees "directly and reasonably incurred in proving an actual violation of [his] rights." 42 U.S.C. § 1997e(d)(1)(A). The Court *may* order that up to 25% of Plaintiff's monetary judgment be used to satisfy the attorney's fees claim. *Id*. at e(d)(2). Defendant cannot be order to pay fees in excess of 150% of the monetary judgment. (*Id*.) The hourly rate used to calculate Plaintiff's attorney's fees award may not exceed 150% of the Criminal Justice Act rates established under 18 U.S.C. § 3006A. *Id*. at e(d)(3).

DATED:     This 2nd day of January, 2008.

        Respectfully Submitted,

        s/*Joyce Ellen Rosendahl*
        Joyce Ellen Rosendahl
        Attorney for Plaintiff Mohammad A. Salameh
        California State Bar No. 242807
        P.O. Box 15966
        Newport Beach, CA  92659
        Phone: 949-922-9462
        Fax: 949-480-0062

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of January, 2008, I electronically filed the foregoing PLAINTIFF'S MOHAMMAD A. SALAMEH'S TRIAL BRIEF with the Clerk of the United States District Court for the Central District of California using the CM/ECF system which will send notification of such filing to Katherine M. Hikida, Assistant United States Attorney, at the following email address: katherine.hikida@usdoj.gov.

        s/*Joyce Ellen Rosendahl*

        Joyce Ellen Rosendahl
        Law Offices of Joyce Ellen Rosendahl
        P.O. Box 15966
        Newport Beach, CA  92659
        Phone: 949-922-9462
        Fax: 949-480-0062
        joycerosendahl@rosendahl-law.com